UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANGELA MICHELLE DORITY,

    Defendant-Movant,

v.

UNITED STATES OF AMERICA,

    Plaintiff-Respondent.
_____/

Case No. 1:23-cv-323

Honorable Paul L. Maloney

**OPINION AND ORDER**

    Currently pending before the Court is Defendant-Movant Angela Michelle Dority ("Defendant")'s *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the reasons set forth below, Defendant's motion will be denied.

**I.    Background**

    On July 30, 2021, Defendant was charged in a Criminal Complaint with: (1) conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) use of a communication facility to facilitate drug trafficking offenses, in violation of 21 U.S.C. § 843(b). *See* Crim. Compl., *United States v. Dority*, No. 1:21-cr-153-2 (W.D. Mich.) (ECF No. 1). After Defendant was arrested, attorney Deno Fotieo was appointed to represent her. However, Defendant subsequently retained attorney Brian Richard Watkins to represent her in this matter. *See* Order, *id.* (ECF No. 78). Shortly thereafter, a grand jury returned an Indictment charging Defendant with: (1) conspiracy to possess with intent to distribute and to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2)

aiding and abetting the possession with intent to distribute 400 grams of more of fentanyl, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). *See* Indictment, *id.* (ECF No. 80).

On May 12, 2022, the government filed a plea agreement in which Defendant agreed to plead guilty to Count Two of a Superseding Indictment, charging her with possession with intent to distribute 400 grams of more of fentanyl, in violation of 21 U.S.C. § 841(a)(1). *See* Plea Agreement, *id.* (ECF No. 280). The Superseding Indictment was filed on May 17, 2022. *See* Superseding Indictment, *id.* (ECF No. 282). The plea agreement set forth that Defendant faced a mandatory minimum term of imprisonment of 10 years and a maximum term of life. *See* Plea Agreement, *id.* (ECF No. 280, PageID.1039).

The plea agreement set forth that Defendant was waiving "all rights to appeal or collaterally attack [her] conviction, sentence, or any other matter relating to this prosecution," except with respect to certain claims. *Id.*, (ECF No. 280, PageID.1045). Specifically, Defendant could appeal or seek collateral relief on the following grounds: (1) her sentence exceeded the statutory maximum; (2) her sentence was based upon an unconstitutional factor; (3) the Court erroneously determined her Sentencing Guidelines range, if Defendant objected on that basis at sentencing; (4) her guilty plea was involuntary or unknowing; and (5) counsel rendered ineffective assistance. *Id.*

Defendant signed the plea agreement under the following paragraph:

> I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

*Id.*, (ECF No. 280, PageID.1047). Defendant's counsel signed the plea agreement under the following paragraph:

3

> I am the attorney for Defendant Angela Michelle Dority. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

*Id.*, (ECF No. 280, PageID.1048).

The parties appeared before Magistrate Judge Sally Berens for Defendant's change of plea and arraignment on the Superseding Indictment on May 18, 2022. *See* Change of Plea Hr'g Tr., *id.* (ECF No. 348). At the outset, Magistrate Judge Berens indicated that the parties would orally amend the plea agreement to refer to Count Two of the Superseding Indictment. *Id.*, (ECF No. 348, PageID.1419). The parties agreed to that plan, and counsel for Defendant noted that Count Two of the Superseding Indictment was substantively the same as the original Indictment. *Id.*

After being sworn, Defendant represented that she had reviewed the Superseding Indictment with counsel. *Id.*, (ECF No. 348, PageID.1423). She indicated that she understood with what she was charged, and that she understood what the government would need to prove to find her guilty. *Id.*, (ECF No. 348, PageID.1424). The Court advised Defendant that she faced a mandatory minimum of 10 years' incarceration and a maximum term of life. *Id.* Defendant stated she understood. *Id.* Defendant had discussed the Sentencing Guidelines with counsel and recognized that no one could guarantee what her final Guidelines range could be at the time of the change of plea hearing. *Id.*, (ECF No. 348, PageID.1425–1427).

Defendant represented that she wanted more time to speak to her attorney, and Magistrate Judge Berens took a break so that Defendant could do so. *Id.*, (ECF No. 348, PageID.1428). When the hearing resumed, Defendant represented that she had received enough time to ask her attorney about the sentencing factors considered as well as possible departures from the Guidelines. *Id.*, (ECF No. 348, PageID.1429). Defendant understood that if her "sentence [was] more severe than

4

[she thought] it might be sitting here today," that she would still be bound by her guilty plea. *Id.*, (ECF No. 348, PageID.1430).

The Court then proceeded to go over the rights that Defendant was giving up in connection with her plea agreement, and Defendant indicated her understanding. *Id.*, (ECF No. 348, PageID.1431–1433). Defendant then entered her guilty plea. *Id.*, (ECF No. 348, PageID.1433). Defendant represented that no one had threatened or forced her to plead guilty, and that no one had made any promises other than those set forth in the plea agreement. *Id.*, (ECF No. 348, PageID.1433–1434). Defendant noted that the decision to plead guilty was "purely voluntary and an act of free will," and that she had received enough time to speak to her attorney about the decision. *Id.*, (ECF No. 348, PageID.1434).

Defendant then represented that she had read the plea agreement before signing it, and that she had discussed it with her attorney before signing. *Id.* (ECF No. 348, PageID.1434–1435). The prosecutor then set forth the key terms of the plea agreement, including the fact that Defendant was waiving her right to directly appeal and collaterally attack her conviction and sentence, except with respect to the five categories set forth above. *Id.*, (ECF No. 348, PageID.1436–1441). Defendant agreed with the summary provided by the prosecutor. *Id.*, (ECF No. 348, PageID.1441).

The prosecutor then set forth the factual basis for the plea. *Id.*, (ECF No. 348, PageID.1443–1444). Defendant agreed that the factual basis was true. *Id.*, (ECF No. 348, PageID.1444). Magistrate Judge Berens then made the following findings:

> I find that the defendant understands the nature of the charge and the penalties provided by law. I find that the plea is made knowingly and with full understanding of each of the rights that I've explained.
>
> I find that the plea is voluntary and free from any force, threats, or promises apart from the contents of the plea agreement. I also find, as I said, that the plea has a sufficient factual basis.

*Id.*, (ECF No. 348, PageID.1445–1446). The Court subsequently adopted Magistrate Judge Berens' Report and Recommendation that Defendant's guilty plea be accepted. *See* R&R and Order, *id.* (ECF Nos. 287, 306).

Defendant appeared before the Court for sentencing on October 12, 2022. The Court sentenced Defendant to 60 months' incarceration, to be followed by 5 years of supervised release. *See* J., *id.* (ECF No. 394). Defendant did not appeal her conviction and sentence.

Defendant filed her § 2255 motion on March 30, 2023. (ECF No. 1.) In an order (ECF No. 3) entered the next day, the Court ordered the government to file a response to the motion. The government then moved for an order authorizing the release of information subject to the attorney client privilege and requested additional time to file a response. (ECF No. 5.) The Court granted that motion on April 3, 2023. (ECF No. 8.) On May 3, 2023, the government filed an affidavit prepared by attorney Watkins, Defendant's prior counsel. (ECF No. 9.) The government filed its response (ECF No. 11) on June 30, 2023, and Defendant filed her reply (ECF No. 13) on July 13, 2023.

## II.   Analysis

### A.   Legal Standards

#### 1.   Section 2255 Proceedings in General

A federal prisoner may challenge her sentence by filing in the district court where she was sentenced a motion under 28 U.S.C. § 2255. A valid § 2255 motion requires a movant to show that "the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 affords relief for a claimed constitutional error only when the error had a substantial and injurious effect or influence on the proceedings. *Watson v. United States*, 165 F.3d 486, 488

6

(6th Cir. 1999). Non-constitutional errors generally are outside the scope of § 2255 relief, and they should afford collateral relief only when they create a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotation marks omitted). As a general rule, a claim not raised on direct review is procedurally defaulted and may not be raised on collateral review absent a showing of either (1) cause and actual prejudice; or (2) actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart*, 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973).

### 2.     Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The Court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

7

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

### 3. Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

## B. Discussion

Defendant raises the following grounds for relief in her § 2255 motion:

I.  Ineffective Assistance of Counsel. Defense counsel failed to file a notice of appeal, after sentencing, when one was requested.

II. Ineffective Assistance of Counsel. Defense counsel failed to argue the amount and purity of the charged fentanyl.

III. Ineffective Assistance of Counsel. Defense counsel failed to communicate with Defendant about the law about the charged drug fentanyl.

IV. Ineffective Assistance of Counsel. Defense counsel failed to inform Defendant that she was pleading guilty to a "mandatory minimum" sentence, thus foreclosing any options for federal sentencing reductions.

(§ 2255 Mot., ECF No. 1, PageID.4–8.)

### 4. Ground I—Failure to File an Appeal

As her first ground for relief, Defendant contends that attorney Watkins failed to file a notice of appeal even though one was requested. (§ 2255 Mot., ECF No. 1, PageID.4.)

"[A]n attorney performs deficiently if, after consulting with his client, he 'disregards specific instructions' from his client 'to file a notice of appeal'—'a purely ministerial task.'" *Pola*

8

*v. United States*, 778 F.3d 525, 533 (6th Cir. 2015) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). Counsel's performance, however, is not "per se deficient simply because he [or she] does not consult with his client about the benefits and drawbacks of an appeal." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 479). Rather, the Court "must determine whether the attorney should have consulted with his client about an appeal because either (1) 'a rational defendant would want to appeal' or (2) the 'defendant reasonably demonstrated to counsel that he was interested in appealing.'" *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480). If the Court determines that "the attorney failed to file a notice of appeal either after the client's express instructions or because there is no reasonable strategic reason not to appeal, then the defendant was prejudiced because he has been deprived 'of the appellate proceeding altogether' if 'there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" *Id.* (quoting *Flores-Ortega*, 528 U.S. at 483–84).

Attorney Watkins has addressed Defendant's assertion that he did not file a notice of appeal in his affidavit. Specifically, attorney Watkins states:

> Upon information and belief, Ms. Dority now claims that after her sentencing she requested that I file an appeal on her behalf. I do not recall hearing from Ms. Dority at all after sentencing, much less to discuss a filing of an appeal.
>
> Upon information and belief, the only contact my office had regarding this case following Ms. Dority's sentencing was from her daughter, who requested the return of certain vital records I had collected to facilitate the generation of Ms. Dority's PSIR.

(ECF No. 9, PageID.30–31, ¶¶ 8–9.) In her reply, which she has signed under the penalty of perjury, Defendant states that she requested that attorney Watkins file a notice of appeal after sentencing. (ECF No. 13, PageID.50.) Defendant states that if she had no right to an appeal, "then why would the judge make this claim? Why would the Court inform her about the time constraints in the appell[a]te process." (*Id.*)

9

Defendant's claim that she asked attorney Watkins to file a notice of appeal is entirely conclusory and self-serving. Defendant's reply is devoid of any details regarding her alleged conversation with attorney Watkins regarding the filing of an appeal, such as a description of the issues Defendant wished to raise on appeal. The Sixth Circuit has noted that a district court does not commit clear error "by crediting counsel's affidavit, insofar as it indicated that [Defendant] had not asked him to file an appeal." *See Cummings v. United States*, 84 F. App'x 603, 605 (6th Cir. 2003); *see also Odom v. United States*, No. 99-5506, 99-5768, 2000 WL 1175598, at *3 (6th Cir. Aug. 9, 2000) (concluding that the district court did not err by crediting defense counsel's affidavit over defendant's).

The Court finds attorney Watkins' affidavit to be credible because, upon review of the record, the Court does not see any viable, nonfrivolous grounds that Defendant could raise on direct appeal. *See Coleman v. United States*, Nos. 1:05-cv-81, 1:03-cr-231, 2009 WL 1393323, at *10 (E.D. Tenn. May 18, 2009) (crediting defense counsel's affidavit on the basis that there were no viable grounds for appeal). Defendant does not assert that her guilty plea was entered unknowingly and involuntarily, and she received a sentence of 60 months, well below the applicable 10-year mandatory minimum. Defendant, therefore, has failed to demonstrate that counsel was ineffective for failing to file a notice of appeal on her behalf. Accordingly, Defendant is not entitled to relief with respect to ground I.

### 5. Grounds II and III—Ineffective Assistance Regarding Fentanyl Law

In ground II, Defendant asserts that attorney Watkins was ineffective for "fail[ing] to argue the amount and purity of the charged fentanyl." (§ 2255 Mot., ECF No. 1, PageID.5.) In ground III, Defendant contends that attorney Watkins "failed to communicate with [her] about the law about the charged fentanyl." (*Id.*, PageID.7.) As an initial matter, Defendant "simply does not state any facts or present any arguments in support of [her] . . . claims," and for that reason alone,

10

Defendant is not entitled to relief on these two grounds. *See United States v. Domenech*, No. 1:06-cr-245-1, 2014 WL 2711962, at *2 (W.D. Mich. June 16, 2014); *see also De Alvarez v. United States*, No. C 13-4026-MWB, 2015 WL 502978, at *9 (N.D. Iowa Feb. 6, 2015) (denying a § 2255 motion where the defendant failed to provide facts to support a claim that counsel failed to challenge the weight and purity of methamphetamine at trial).

In any event, attorney Watkins has addressed Defendant's claims in his affidavit. He states:

> Prior to Ms. Dority's sentencing, I explained to her the aggregation of controlled substances and its limitations as well as the number of points she was assigned due to the amount of controlled substance. I also explained to Ms. Dority that counsel for Plaintiff and myself identified certain alleged controlled substances that should not be considered (and which after an agreed upon adjustment in the relevant sentencing documents had no net effect on her point assignment).

(ECF No. 9, PageID.30, ¶ 7.)

When preparing Defendant's Presentence Investigation Report (PSR), the Probation Officer noted that Defendant's base offense level was 32. *See* PSR, *United States v. Dority*, No. 1:21-cr-153-2 (W.D. Mich.) (ECF No. 359, PageID.1564). This was based on a total converted drug weight of 4,318.78 kilograms. *Id.* Specifically, Defendant was held responsible for a converted drug weight of 200 kilograms of cocaine and 4,188.78 kilograms of a substance containing fentanyl. *Id.*

To the extent that Defendant contends that her base offense level should have been based upon the amount of pure fentanyl, and not the weight of a mixture or substance containing a detectable amount of fentanyl, her argument fails. The Sixth Circuit has noted that "Congress itself specifically determined that punishments for possession or distribution of fentanyl should be based not on the weight of fentanyl alone, but rather upon the weight of any 'mixture or substance containing *a detectable amount* of [fentanyl].'" *United States v. Harris*, 774 F. App'x 937, 941 (6th Cir. 2019) (quoting 21 U.S.C. § 841(b)(1)(A)(vi) and (b)(1)(B)(vi) (emphasis in original). The

11

*Harris* Court cited an amendment to the Sentencing Guidelines noting that fentanyl abuse has become more prevalent and dangerous in recent years. *Id.* (citing U.S.S.G. App. C, amend. 807 (2018)). Thus, given the dangers of mixing fentanyl with other controlled substances, Congress and the Sentencing Commission "created a rational sentencing scheme for punishing a mix of fentanyl and heroin as fentanyl alone." *Id.* Counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").

In sum, Defendant has not demonstrated that counsel was ineffective for failing to explain the law governing fentanyl, as well as for failing to challenge the purity and weight of the amount of fentanyl used to determine Defendant's Guidelines range. Defendant, therefore, is not entitled to relief with respect to grounds II and III.

### 6.   Ground IV—Ineffective Assistance Regarding Mandatory Minimum

Finally, Defendant contends that counsel "failed to inform [her] that she was pleading guilty to a 'mandatory minimum' sentence, thus foreclosing any options for federal sentencing reductions." (§ 2255 Mot., ECF No. 1, PageID.8.)

Attorney Watkins has addressed this assertion in his affidavit. He states:

> From the outset of my representation of Ms. Dority, we discussed the mandatory minimum sentences related to her charges many times. As well, I explained to Ms. Dority the ways mandatory minimums can be released, including what is commonly referred to as "[Safety] Valve" application and by the Court's Order. Ms. Dority communicated that she understood the mandatory minimums, that she understood the certain ways mandatory minimums may be released. As well, she stated that she understood she may not be "[Safety] Valve" eli[]gible and Plaintiff moving the Court for release of mandatory minimums was not guaranteed.
>
> Following Ms. Dority's plea and proffer, it was determined that Ms. Dority was likely ineligible for "[Safety] Valve" consideration due to factors related to firearms which came to light. This was explained to Ms. Dority, and she remained hopeful that Plaintiff would move the Court for release of the mandatory minimum.

12

> Ultimately, the Court was moved to release the mandatory minimum, which it did. Additionally, Ms. Dority was sentenced below her guidelines to a term of years equivalent to half of the released mandatory minimum.

(ECF No. 9, PageID.29–30, ¶¶ 3–5.)

Even without attorney Watkins' affidavit, Defendant's claim would fail. As set forth *supra*, Defendant's plea agreement explicitly set forth that she faced a mandatory minimum term of imprisonment of 10 years and a maximum term of life. *See* Plea Agreement, *United States v. Dority*, No. 1:21-cr-153-2 (W.D. Mich.) (ECF No. 280, PageID.1039). Defendant signed the plea agreement under a paragraph stating that she had read the agreement, discussed it with counsel, and that she understood the terms of the agreement. *Id.* (ECF No. 280, PageID.1047).

Moreover, during her change of plea hearing, Magistrate Judge Berens advised Defendant that she faced a mandatory minimum of 10 years' incarceration and a maximum term of life. *See* Change of Plea Hr'g Tr., *id.* (ECF No. 348, PageID.1424.) Defendant stated that she understood. *Id.* Defendant also had discussed the Sentencing Guidelines with counsel and recognized that no one could guarantee what her final Guidelines range could be at the time of the change of plea hearing. *Id.*, (ECF No. 348, PageID.1425–1430). At the end of the hearing, Magistrate Judge Berens concluded, *inter alia*, that Defendant understood the "penalties provided by law." *Id.*, (ECF No. 348, PageID.1445–1446).

Based upon attorney Watkins' affidavit, the plea agreement, and Defendant's responses during the change of plea colloquy, Defendant cannot now contradict the record and assert that attorney Watkins failed to discuss the mandatory minimum sentence applicable to the charge to which she pleaded guilty. Even if attorney Watkins had provided erroneous information, "a defendant is not entitled to relief if the misinformation is directly refuted on the record by the . . . judge during a plea colloquy." *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299–300 (6th Cir. 2016). Defendant, therefore, is not entitled to relief with respect to ground IV.

13

In sum, Defendant has not demonstrated that counsel rendered ineffective assistance in the ways she argues. Defendant, therefore, is not entitled to relief on her § 2255 motion. Furthermore, because the record conclusively establishes that Defendant is not entitled to relief, there is no need for the Court to conduct an evidentiary hearing.

### III.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Defendant has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that she is in custody in

violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

IV.     **Conclusion**

For the foregoing reasons, the Court will deny Defendant's § 2255 motion. Accordingly,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (requiring a separate judgment in habeas proceedings).


Dated:   October 4, 2024                             /s/ Paul L. Maloney
                                                                   Paul L. Maloney
                                                                   United States District Judge